UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CATHERINE LEAVY,<br><br>  Defendant | CRIMINAL No.22-10271-LTS |

SENTENCING MEMORANDUM

Defendant Catherine Leavy stands convicted of making a bomb threat against Boston Children's Hospital ("BCH"). That threat was clear and precise. Her actions resulted in the hospital's lockdown, interfering with necessary medical care and spreading fear amongst an especially vulnerable community. The Court must fashion a sentence that reflects the seriousness of this conduct, imposes just punishment for the offense, promotes respect for the law, and deters others from committing similar crimes. While Ms. Leavy's remorse and personal characteristics are mitigating and should result in a downward variance from the guideline range, a sentence of incarceration is necessary to achieve the statutory purposes of sentencing. The government recommends a sentence of thirty days imprisonment.

FACTUAL BACKGROUND

As stated in the Presentence Investigation Report ("PSR"), this prosecution did not arise in a vacuum. Rather, beginning in August 2022, BCH was subjected to a sustained harassment

campaign based on the care provided by the hospital to gender-diverse and transgender individuals.[1]

On August 30, 2022, Leavy called BCH and spoke to a hospital employee on a recorded line. She said, "There is a bomb on the way to the hospital, you better evacuate everybody you sickos." As a result of the call, BCH was put into lockdown status and a bomb squad was dispatched. No explosive devices were found.

On September 15, 2022, law enforcement interviewed Leavy at her home. The interview was recorded. During the interview, Leavy expressed disapproval of BCH on multiple occasions. After further questioning, she admitted making the bomb threat. Leavy also stated that she had no plan or intention to actually bomb BCH.

## GUIDELINE CALCULATION AND SENTENCING OPTIONS

There is no plea agreement in this case. Neither party has objected to the guideline calculation in the PSR. Accordingly, the applicable guideline range is as follows:

| USSG § | Description | Level |
|---|---|---|
| 2A6.1(a)(1) | Base offense level for threatening/harassing communications and hoaxes | 12 |
| 2A6.1(b)(4)(A) | Offense resulted in substantial disruption of public, governmental, or business functions or services | +4 |
| 3E1.1 | Defendant accepted responsibility | -3 |
| TOTAL | | 13 |

With a criminal history category of I, Probation calculates the advisory guideline range as 12-18 months. Reimbursement is also due and owing to the Boston Police Department in the amount of $2,321.75 for the cost of their response. 18 U.S.C. § 1038(c)(1). The government has

---

[1] *See generally* Persevering while in the bull's-eye of hate; Boston Children's staff endure threats, vitriol over gender services to teens. Jessica Bartlett, the Boston Globe, A1, 12/4/22

conferred with BCH and confirmed that it is not seeking restitution for any of its losses that resulted from the defendant's conduct.

## RECOMMENDATION

Viewed in isolation and as reflected in the guideline sentencing range, the criminal conduct in this case calls for incarceration. The defendant's short call to BCH established her (1) criminal conduct, (2) goal, and (3) motivation, all in a single sentence. By stating that there was a bomb on the way to the hospital, the defendant made a threat that was both immediate and significant to the patients and staff of the facility. By stating that the hospital should evacuate everybody, the defendant indicated that she intended to provoke a response and interrupt the care that was being provided at BCH. And by referring to the targets of her threat as "sickos," the defendant communicated that the call was directly related to the care being provided by BCH as reflected in news coverage. Instead of attempting to register disagreement with the (perceived) policy of a private medical institution through peaceful means, the defendant threatened to blow up the hospital. Her actions terrorized staff and traumatized children who should have been focused on healing from their injuries. She willfully interrupted the care that was being performed at the hospital to suit her own ends.

Even so, the defendant's criminal conduct cannot be viewed in isolation and must be considered in light of her individual history and characteristics. The defendant's history and characteristics, both before and after she committed the instant offense, are mitigating. Before the offense, the PSR sets forth personal medical issues that diminish the defendant's culpability. Out of respect for the defendant's privacy, the government will not go into details within this filing. After the offense, the defendant's acceptance of responsibility and participation in a restorative justice program is laudatory. The government believes that the defendant's expression of remorse

is genuine and heartfelt. If the need to protect the public from the defendant and her risk of recidivism was the only consideration before the Court, the government would not recommend a term of incarceration.

But there are other considerations. The sentence imposed must send a message to the community that making bomb threats is a serious crime and cannot be wiped away with an apology (no matter how heartfelt). The Court must also account for general deterrence in fashioning a sentence. Even if the defendant is a low risk for recidivism, the conduct she committed is all too likely to reoccur. There is a heated debate in the First Circuit as to whether general deterrence, without more, can support an upward variance from the guideline range. See United States v. Flores-Gonzalez, 86 F.4th 399 (1st Cir. 2023) (en banc). Regardless of how that debate is ultimately resolved, all agree that general deterrence is an appropriate consideration for sentences within (and below) the guideline range. A sentence that does not result in a term of imprisonment, in light of the aggravating facts of this criminal conduct, sends the wrong message to society by minimizing the personal risk in making anonymous threats as part of a public dialogue.

The government recommends a sentence of thirty-days imprisonment. A thirty-day sentence properly balances the seriousness of the conduct and the need for general deterrence against the defendant's personal characteristics and expressed remorse. It is also in line with another recent threat case involving similar conduct, albeit one that did not result in a direct disruption to medical care. See United States v. Lindner, 22-10354-WGY (D. Mass 2024) (sentence of three months incarceration based on threatening voicemail to physician specializing in gender-affirming care).

The Court is also authorized to impose a period of home confinement as a condition of supervised release in addition to a term of imprisonment. The government recommends six months

of home detention following the defendant's release from incarceration and a three-year term of supervised release. This additional period of home detention will reinforce the seriousness of the defendant's conduct while recognizing the limited utility of a lengthy term of incarceration for this defendant.

                                            Respectfully submitted,

                                            JOSHUA S. LEVY
                                            Acting United States Attorney

By:    */s/ Jared C. Dolan*
        JARED C. DOLAN
        Assistant United States Attorney

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

                                            */s/ Jared C. Dolan*
                                            JARED C. DOLAN
                                            Assistant United States Attorney

Date: June 14, 2024